The opinion of the Court was delivered by
Johnston, Ch.
The Chancellor, remarking upon the words, “ which is entailed to her brothers, she leaving no lawful issue,” says, “ It w&s properly argued that these latter words meant, if she should die and leave no lawful issue at the time of her death.”
In this observation we concur. A person is commonly said to leave or not. leave issue at that juncture of time when he *405 departs this life; by which event he becomes separated from his earthly connexions, and leaves them behind him. The addition of “die,” “depart this life,” or the like, could not intensify the meaning of the word “leave,” which is as significant without as with them. And to this effect is the case of Mansell vs. Grove, 21 Eng. Ch. Rep. 484; S. C. 2 Young and Collyer. The bequest, in that case, so far as it is necessary to notice it, was of a remainder of residuary personal estate “to Edward Moreton Pleydell, for his life, and his heirs male after him ; if he should not leave any son, then to go to Wm. Moreton Pleydell and his heirs male.” The Vice Chancellor said : “ The question is whether the word ‘ leaving’ and the word‘leave’ are tobe construed strictly according to the ordinary signification, as importing the not leaving issue at the death of the former taker. The ordinary, if not the universal rule of the Court, in cases of this description, affecting mere personal estate, is that such words import, not an indefinite failure of issue, but a failure of issue at the death of the preceding taker.”
The event, in the present case, upon which the property was to go over, or in other words, upon which the prior interest was to be divested, being not too remote; the only question that remains is, are the persons to whom it is limited over so described, and their interests so described, that effect can be given to that part of the will.
The limitation is to the brothers of Anna Nettles. One of these died in the life time of the testator, perhaps before the will was executed, and so he either never had any expectation of interest, or his interest lapsed, and merged in that of the other brothers who were alive when the will came into operation. As to these, the interests whatever they are that were conferred upon them, were not given to them upon condition that they should survive Anna, the first taker. They took at the death of the testator, personal interests so vested as to be transmissible, being contingent only upon the event upon which the prior interest of Anna should terminate.
*406 What is the nature of their interests ? The testator gives the property to Anna, and if she dies without leaving issue, entails it to them. What was his precise idea of entailing to them what he had given to her, it would be difficult to conjecture, nor is it necessary to ascertain. He was inops concilia, and ignorant of the law, of which the whole will bears evidence. He probably conceived, as the popular belief is, that giving over the property from one member of his family and limiting it to other members, was entailing it. But this is of no sort of consequence whatever. Suppose upon the death of Anna he had limited over the property to the brothers and the heirs of their bodies, by words which applied to real estate would have created an estate tail in England; it is well settled that such words would have given them an absolute interest in personalty — and this is enough for this case.
These observations dispose of the decree.
Respecting one of the negro girls given by the will, and her issue, the bill admits the ignoiance of the plaintiffs as to what has become of them. No remedy is sought as to this family of slaves. The other Dinah, and her increase, are the real subjects of the suit. It is clear that the life estate of Anna, in these negroes vested in Cannon, her second husband; whether he obtained them on his marriage with her, or acquired them afterwards is immaterial. By acquisition of this property he as life tenant, per auter vie, became trustee for the remainder-men ; and his executors by a wrong distribution of the property under his will, subjected themselves and those to whom they delivered it, to the suit of the remaindermen or their personal representatives,
But we have not enough before us to^ make the decree— reference being had to the evidence, and to the situation of all parties — proper to be made in the case.
It is, therefore, ordered that the decree appealed from be reversed and set aside; and that the cause be remanded to the Circuit Court, in order that a decree be there made conformable to this opinion : and that the evidence now taken and such as *407 the parties may offer before the Commissioner be received, in order to make up such decree: and that the Commissioner, on such evidence, report the situation of those slaves, in whose hands they now áre, and from whom they received them directly and indirectly, with their value, and all other matters necessary to ground a decree upon: with leave to report special matter.
Wardlaw, Ch. concurred.

Decree reversed.